**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MATT DINERSTEIN, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>    v.<br><br>GOOGLE, LLC, a Delaware limited liability company, and THE UNIVERSITY OF CHICAGO MEDICAL CENTER, an Illinois not-for-profit corporation, THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation,<br><br>        *Defendants*. | Case No. 1:19-cv-04311<br><br>Hon. Rebecca R. Pallmeyer |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ....................................................................................2

ARGUMENT ..........................................................................................................3

I.     MR. DINERSTEIN HAS ARTICLE III STANDING .....................................3

      A.     The Constitution Does Not Prohibit Mr. Dinerstein from Seeking Relief for a Breach of Contract .........................................................................4

      B.     Mr. Dinerstein suffered an invasion of privacy ...................................6

      C.     Defendants stole the commercial value of Mr. Dinerstein's medical information .................................................................................9

II.     THE COMPLAINT STATES A CLAIM FOR RELIEF ..............................10

      A.     The Complaint sufficiently alleges breach of contract and tortious interference with contract ..................................................................11

            1.     HIPAA does not preempt the contract (or any other) claim ................12

            2.     The pre-existing duty rule does not apply .................................13

            3.     HIPAA (and thus the contract) does not allow disclosure here ...........16

            4.     The MPRA (and thus the contract) does not allow disclosure here .....18

            5.     Mr. Dinerstein alleges damages .............................................19

      B.     The Complaint sufficiently alleges a violation of the ICFA ...........................21

      C.     The Complaint sufficiently alleges common law torts by both Defendants ...24

CONCLUSION .....................................................................................................27

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Alexander v. Sandoval*,
    532 U.S. 275 (2001).................................................................14

*Balt. & O.S.W. Ry. Co. v. Voigt*,
    176 U.S. 498 (1900)................................................................6

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013)................................................................8

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)......................................................3, 4, 6

**United States Circuit Court of Appeals Cases:**

*Benson v. Fannie May Confections Brands, Inc.*,
    No. 19-1032, 2019 WL 6698082 (7th Cir. Dec. 9, 2019)...........................22, 23

*Beraha v. Baxter Health Care Corp.*,
    956 F.2d 1436 (7th Cir. 1992) ...................................................16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) .................................................22-23

*Carlsen v. GameStop, Inc.*,
    833 F.3d 903 (8th Cir. 2016) ......................................................4

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
    887 F.3d 803 (7th Cir. 2018) .....................................................25

*Doe v. Columbia Coll. Chicago*,
    933 F.3d 849 (7th Cir. 2019) .....................................................11

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) ......................................................4

*Gubala v. Time Warner Cable, Inc.*,
    846 F.3d 909 (7th Cir. 2017) ......................................................8

*Hart v. Transit Mgmt. of Racine, Inc.*,
    426 F.3d 863 (7th Cir. 2005) .....................................................24

*Hutchison v. Fitzgerald Equip. Co.*,
    910 F.3d 1016 (7th Cir. 2018) ...................................................................26

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
    821 F.3d 935 (7th Cir. 2016) .....................................................................17

*Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*,
    912 F.3d 316 (6th Cir. 2018) .....................................................................21

*J.P. Morgan Chase Bank, N.A. v. McDonald*,
    760 F.3d 646 (7th Cir. 2014) ..................................................................4, 5

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) .....................................................................23

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) .......................................................................4

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    819 F.3d 963 (7th Cir. 2016) .................................................................5, 8, 9

*N.A.A.C.P. v. Am. Family Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir. 1992) .....................................................................10

*Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*,
    908 F.2d 1363 (7th Cir. 1990) ...................................................................20

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ..................................................................5, 8

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) .................................................................5, 10

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*,
    900 F.3d 284 (6th Cir. 2018) .......................................................................4

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ..................................................................7, 9

*Strauss v. Chubb Indem. Ins. Co.*,
    771 F.3d 1026 (7th Cir. 2014) .....................................................................6

*Vigortone AG Prod., Inc. v. PM AG Prod., Inc.*,
    316 F.3d 641 (7th Cir. 2002) .................................................................24-25

*Vojdani v. Pharmsan Labs, Inc.*,
    741 F.3d 777 (7th Cir. 2013) ........................................................................9

*Williams v. Seniff*,
    342 F.3d 774 (7th Cir. 2003) ......................................................................24

*Zegers v. Zegers, Inc.*,
    458 F.2d 726 (7th Cir. 1972) .......................................................................9

**United States District Court Cases:**

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
    249 F.R.D. 530 (N.D. Ill. 2008)................................................................16

*Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*,
    No. 09 C 4963, 2011 WL 829390 (N.D. Ill. Mar. 3, 2011) ..........................20

*Bible v. United Student Aid Funds, Inc.*,
    799 F.3d 633 (7th Cir. 2015) ..............................................................12, 13

*CS Wang & Assoc. v. Wells Fargo Bank, N.A.*,
    305 F. Supp. 3d 864 (N.D. Ill. 2018) ...........................................................6

*Dixon v. Washington & Jane Smith Cmty.-Beverly*,
    No. 17 C 8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018) ........................6

*Dolmage v. Combined Ins. Co. of Am.*,
    No. 14 C 3809, 2016 WL 754731 (N.D. Ill. Feb. 23, 2016)........................15

*Duqum v. Scottrade, Inc.*,
    No. 15-CV-1537, 2016 WL 3683001 (E.D. Mo. July 12, 2016) ....................7

*Gen. Elec. Co. v. Uptake Techs., Inc.*,
    394 F. Supp. 3d 815 (N.D. Ill. 2019) .........................................................11

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ................15

*In re: Premera Blue Cross Customer Data Sec. Breach Litig.*,
    No. 15-MD-2633, 2017 WL 539578 (D. Or. Feb. 9, 2017)...........................15

*In re Supervalu, Inc.*,
    No. 14-MD-2586, 2016 WL 81792 (D. Minn. Jan. 7, 2016)........................ 6-7

*In re Zappos.com, Inc.*,
    108 F. Supp. 3d 949 (D. Nev. 2015) ........................................................ 6-7

*Jackson v. Lowes Hotels, Inc.*,
   No. 18-827, 2019 WL 2619656 (E.D. Cal. Jan. 4, 2019) ....................................................7

*Miller v. Sw. Airlines Co.*,
   No. 18 C 86, 2018 WL 4030590 (N.D. Ill. Aug. 23, 2018)................................................6

*Muir v. Nature's Bounty, Inc.*,
   No. 15 C 9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017)..........................................10

*Nat'l Jockey Club v. Ganassi*,
   No. 04 3743, 2009 WL 2177217 (N.D. Ill. July 21, 2009)...............................................20

*Res. Dealer Grp., Inc. v. Exec. Servs., Ltd.*,
   No. 97 C 4343, 1997 WL 790737 (N.D. Ill. Dec. 18, 1997) .............................................16

*Richards v. Mitcheff*,
   696 F.3d 635 (7th Cir. 2012) ............................................................................................10

*Santangelo v. Comcast Corp.*,
   162 F. Supp. 3d 691 (N.D. Ill. 2016) ................................................................................23

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014) ...................................................................................7

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) ............................................................................................12

*Worix v. MedAssets, Inc.*,
   869 F. Supp. 2d 893 (N.D. Ill. 2012) ................................................................................22

*Zurbriggen v. Twin Hill Acquisition Co.*,
   338 F. Supp. 3d 875 (N.D. Ill. 2018) ................................................................................10

**State Cases:**

*Alberts v. Devine*,
   479 N.E.2d 113 (Mass. 1985) ...........................................................................................24

*Biddle v. Warren Gen. Hosp.*,
   715 N.E.2d 518 (Ohio 1999)..............................................................................................24

*Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*,
   175 A.3d 1 (Conn. 2018) ....................................................................................................24

*Coleman v. Madison Two Assocs.*,
   307 Ill. App. 3d 570 (1st Dist. 1999) ................................................................................16

*Geisberger v. Willuhn*,
    72 Ill. App. 3d 435 (2d Dist. 1979)....................................................................26

*Grant v. Bd. of Educ. of City of Chicago*,
    282 Ill. App. 3d 1011 (1st Dist. 1996) ...........................................................16

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    131 Ill. 2d 145 (1989) .......................................................................................11

*Illinois Bell. Tel. Co. v. Plote, Inc.*,
    334 Ill. App. 3d 796 (1st Dist. 2002) ..............................................................11

*James v. Lifeline Mobile Medics*,
    341 Ill. App. 3d 451 (4th Dist. 2003)...............................................................19

*Lawson v. Halpern-Reiss*,
    212 A.3d 1213 (Vt. 2019) ..............................................................................1, 24

*Lo v. Provena Covenant Med. Ctr.*,
    356 Ill. App. 3d 538 (4th Dist. 2005)...............................................................14

*MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*,
    364 Ill. App. 3d 6 (1st Dist. 2006) ...................................................................20

*McCormick v. England*,
    494 S.E.2d 431 (S.C. Ct. App. 1997)...............................................................24

*MHM Services, Inc. v. Assurance Co. of Am.*,
    2012 IL App (1st) 112171..................................................................................19

*Petrillo v. Syntex Labs., Inc.*,
    148 Ill. App. 3d 581 (1st Dist. 1986) .....................................................1, 25, 26

*Ransburg v. Haase*,
    224 Ill. App. 3d 681 (3d Dist. 1992).............................................................20-21

*Rumford v. Countrywide Funding Corp.*,
    287 Ill. App. 3d 330 (2d Dist. 1997)................................................................23

*White v. Vill. of Homewood*,
    256 Ill. App. 3d 354 (1st Dist. 1993) ..............................................................14

*Woods v. Cole*,
    181 Ill. 2d 512 (1998) .......................................................................................26

**Rules and Statutory Provisions:**

42 U.S.C. § 1320d ................................................................................................13

45 C.F.R. § 160 ...................................................................................................19

45 C.F.R. § 164 ..............................................................................................17-18

77 Ill. Admin. Code § 250 ..............................................................................18-19

410 ILCS 50 ............................................................................................... *passim*

815 ILCS 505 .......................................................................................................21

Pub. L. No. 104-191, 110 Stat. 1936 (1996) ........................................... *passim*

**Other Authorities:**

3 Williston on Contracts § 7:41 (4th ed.) .........................................................13

17A Am. Jur. 2d Contracts § 149 .......................................................................13

Restatement (Second) of Torts § 876 .................................................................26

## INTRODUCTION

Respect for the confidences revealed by patients in the course of medical treatment is "a concept that has its genesis in the Hippocratic Oath." *Lawson v. Halpern-Reiss*, 212 A.3d 1213, 1217 (Vt. 2019); *see also Petrillo v. Syntex Labs., Inc.*, 148 Ill. App. 3d 581, 589 (1st Dist. 1986) ("As a reading of the oath discloses, physicians have, for several hundred years, acknowledged their obligation of keeping in trust a patient's confidences.") (emphasis omitted). Plaintiff Matt Dinerstein alleges that Defendants The University of Chicago and The University of Chicago Medical Center (collectively the "University")—at the encouragement of Defendant Google, LLC ("Google")—violated this obligation by selling confidential information obtained during his medical treatment. Defendants do not (nor could they on a motion to dismiss) dispute those allegations. Instead, they argue that his suit seeking relief for this invasion should be dismissed for two reasons: that he lacks Article III standing to sue in federal court and that he fails to state a claim for relief. Those arguments are without merit.

First, Mr. Dinerstein has Article III standing. He has suffered three separate, but related, types of injuries: the failure to receive the full benefit of his bargain with the University, the invasion of his privacy, and the misappropriation of the commercial value of his protected information. Any one of these injuries alone is sufficient to support Article III standing.

Second, he states a claim for relief. Broadly speaking, the Amended Class Action Complaint and Demand for Jury Trial (dkt. 42) (the "Complaint" or "Compl.") asserts three theories of liability against Defendants: breach of contract and tortious interference with contract, violations of the Illinois Consumer Fraud Act ("ICFA"), and breach of common law duties of confidentiality. While Defendants lob a farrago of attacks against the various counts alleged in the Complaint, none hit their mark. The University had an obligation—contractual,

1

statutory, and common law—not to disclose Mr. Dinerstein's private medical information, and Google had an obligation not to encourage or otherwise assist the University to do so. The Complaint alleges that both Defendants ignored those obligations and sets forth multiple legal theories by which Defendants can be held liable.

The motions to dismiss should be denied.

## FACTUAL BACKGROUND

Mr. Dinerstein was admitted to the University Medical Center multiple times in 2015. (Compl. ¶ 92.) Upon admission, the University provided him with at least two documents: an Admission and Outpatient Agreement and Authorization (the "Agreement"), and a Notice of Privacy Practices (the "NPP" or "Notice"). (*Id*. ¶¶ 61, 125-26, 153-54.)[1] In the Agreement, the University promised Mr. Dinerstein that "all efforts will be made to protect [your] privacy[.]" (Agreement § III.) The Agreement further promised that "any use of [your] medical information will be in compliance with federal and state laws, including all laws that govern patient confidentiality[.]" (*Id*.) Such laws include the Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), and the Illinois Medical Patient Rights Act, 410 ILCS 50 ("MPRA"). Finally, the Agreement provided that any use of Mr. Dinerstein's medical information would be in compliance with the Notice of Privacy Practices. (Agreement § III.) The Notice went on to state that the University "will obtain your written permission … [b]efore we share your Highly Confidential Information for a purpose other than those permitted by law" and that it "will obtain your written permission … [f]or the sale of your medical information." (NPP at 5.) Based on these, and other, representations, Mr. Dinerstein

---

[1]     The Agreement was attached to the Complaint as Exhibit 2. (Dkt. 42-2.) The Notice of Privacy Practices was attached to the University's Motion to Dismiss as Exhibit 1. (Dkt. 44-1.)

thought his medical information was safe and paid the University to treat him. (Compl. ¶¶ 31, 111-12, 134.)

Little did Mr. Dinerstein know, Google had been engaged in a decade-long project to enter the healthcare analytics market, which would require the collection of large amounts of patient data. (*Id*. ¶¶ 37-57.) After a few false starts (*see id*. ¶¶ 44, 48-50, 67), Google found a willing partner in the University. (*Id*. ¶¶ 57-58.) Pursuant to this partnership, the University provided Google with hundreds of thousands of its patients' medical records, including Mr. Dinerstein's. (*Id*. ¶¶ 59, 95.) Those records contained highly sensitive information about patients, including, among other things, information regarding patients' diagnoses, prescriptions, chronic conditions, pregnancy, addiction issues, and sexually transmitted diseases. (*Id*. ¶¶ 25, 65, 93.) Furthermore, the records were not sufficiently anonymized. (*Id*. ¶¶ 68-69, 89, 95.) In exchange for the records, Google paid the University in the form of a perpetual license to use software generated by Google—remuneration of substantial value. (*Id*. ¶¶ 66, 118.)

The University did not obtain Mr. Dinerstein's (nor any other patient's) consent to sell or otherwise disclose their medical records to Google. (*Id*. ¶¶ 60, 97.)

## ARGUMENT

## I.     MR. DINERSTEIN HAS ARTICLE III STANDING.

Article III standing requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Mr. Dinerstein has suffered three separate, but related, types of injuries, any one of which alone is sufficient to establish standing.

A. **The Constitution Does Not Prohibit Mr. Dinerstein from Seeking Relief for a Breach of Contract.**

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo*, 136 S. Ct. at 1547. There can be no question that determining whether one party to a lawsuit has breached a contract with the other party falls squarely within that authority. *See, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (quoting *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016)) ("[A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged."); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000) ("In most kinds of litigation, there is scant need for courts to pause over the standing inquiry. One can readily recognize that … a party to a breached contract bears the kind of claim that he may press in court."). That's why the Supreme Court requires courts to analogize to traditional common-law claims—like breach of contract—to determine if injuries under novel statutory causes of action meet Article III's requirements. *See Spokeo*, 136 S. Ct. at 1549. It is unsurprising, therefore, that Defendants are unable to cite a single case in which a court holds that a plaintiff alleging that it was party to a breached contract lacks Article III standing.

"Like any private contract claim, [Mr. Dinerstein's] injury does not depend on allegation of financial loss. His injury is that he was denied the benefit of his bargain." *See Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018). "Formation of a bilateral contract requires each party to take on one or more legally binding obligations in exchange for the other party doing the same. When one party fails to honor its commitments, the other party to the contract suffers a legal injury sufficient to create standing even where that

party seems not to have incurred monetary loss or other concrete harm." *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650-51 (7th Cir. 2014). Here, Mr. Dinerstein has alleged that the University made an enforceable promise to him that it would not disclose his sensitive medical information in a manner contrary to state and federal law. (Compl. ¶ 32.) As it stands now, the University insists that it has done nothing wrong and continues to permit Google to keep that exact medical information. Even assuming that the University is right that money damages are inappropriate here, Mr. Dinerstein is certainly entitled to ask the Court to enforce the contract and make sure that he gets the benefit of his bargain. That could, for example, come in the form of injunction requiring the University to make Google delete his information, which Mr. Dinerstein has specifically requested. (*See id*. at 44; *see also id.* Ex. 1 §§ 5.2, 5.4 (setting out University's unilateral right to cancel contract with Google and demand deletion of patient data).)

The Seventh Circuit authority the University cites is not to the contrary. Neither *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) nor *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) have anything to do with cases involving a breach of an express contractual obligation. The reason plaintiffs in those cases had to rely on alternative theories of injury was exactly because they weren't able to point to an express promise by the defendants to keep the relevant information confidential. In *Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015), the plaintiff *affirmatively consented* to such data sharing. Mr. Dinerstein, by contrast, alleges that the University broke an enforceable promise to him by sharing his data with Google. To hold that the Constitution somehow prohibits him from even attempting to enforce that right would vitiate "the usual and most important function of courts of justice … to maintain

5

and enforce contracts." *Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1034 (7th Cir. 2014)

(quoting *Balt. & O.S.W. Ry. Co. v. Voigt*, 176 U.S. 498, 505 (1900)).

       **B.**       **Mr. Dinerstein suffered an invasion of privacy.**

       Second, Mr. Dinerstein has standing because Defendants invaded his privacy. He alleges

that Google solicited—and the University eagerly disclosed—his confidential medical records

despite contractual, statutory, and common law obligations not to do so. Those allegations

underlie every count of his complaint, and are sufficient to establish his Article III standing. *See*,

*e.g.*, *CS Wang & Assoc. v. Wells Fargo Bank, N.A.*, 305 F. Supp. 3d 864, 880 (N.D. Ill. 2018)

("[T]he court concludes that Plaintiffs have suffered a sufficiently concrete injury by alleging a

violation of their right to privacy."); *Miller v. Sw. Airlines Co.*, No. 18 C 86, 2018 WL 4030590,

at *3 (N.D. Ill. Aug. 23, 2018), *aff'd on other grounds*, 926 F.3d 898 (7th Cir. 2019)

("[D]isclosure to a third party of information in which a person has a right of privacy constitutes

a sufficiently concrete injury for standing purposes where the information is disclosed without

the person's knowledge or consent."); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17

C 8033, 2018 WL 2445292, at *10 (N.D. Ill. May 31, 2018) ("[W]here privacy rights are

concerned, the dissemination to a third party of information in which a person has a right to

privacy is a sufficiently concrete injury for standing purposes.").

       The University argues that invasion of privacy is "too abstract to establish Article III

standing." (Univ. Mot. at 6-7.) That view, however, is contrary to the Supreme Court's holding

in *Spokeo* that "intangible injuries can … be concrete," 136 S. Ct. at 1549, and the three cases

cited by the University in support of their assertion—all out of circuit—rely on a footnote in a

single pre-*Spokeo* case. *See In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015);

*In re Supervalu, Inc.*, No. 14-MD-2586, 2016 WL 81792, at *8 (D. Minn. Jan. 7, 2016) (citing

*Zappos*) *rev'd in part on standing grounds*, 870 F.3d 763 (8th Cir. 2018); *Duqum v. Scottrade, Inc.*, No. 15-CV-1537, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016) (citing *Zappos* and *Supervalu*).

The University also argues that "[t]he law is clear that mere unauthorized exposure of personally identifiable information to third parties does not establish standing." (Univ. Mot. at 7.) In support, the University cites two data breach cases: *Jackson v. Lowes Hotels, Inc.*, No. 18-827, 2019 WL 2619656 (E.D. Cal. Jan. 4, 2019) and *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871 (N.D. Ill. 2014). But unlike data breach cases, this case is not about "mere unauthorized exposure" of private information, it's about the intentional disclosure—indeed, the sale—of such information in violation of contractual, statutory, and common law obligations not to do so. Rather than data breach cases, this Court should instead look to cases like *Miller* and *Dixon* where the plaintiffs' confidential information was—like here—alleged to have been intentionally disclosed to third parties. *See also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that [defendant] disclosed their personal information in violation of [a federal privacy statute], [plaintiffs] have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."). Furthermore, the University's reliance on *Strautins* for the proposition that "loss of privacy" is not an injury supporting standing is particularly misguided. (Univ. Mot. at 6-7.) In *Strautins*, the court held that the plaintiff lacked standing not because loss of privacy from a data breach is an insufficient injury, but because her complaint failed to allege that *her* private information was among that exposed in the data breach. 27 F. Supp. 3d at 879-81. Contrary to the University's assertion, *Strautins* thus suggests that loss of privacy *is* an injury sufficient to support Article III standing where, as here, plaintiff's confidential information has in fact been revealed to others. *Cf. also*

*Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912 (7th Cir. 2017) (finding no Article III standing for invasion of privacy where "there is no indication that [defendant] has released, or allowed anyone to disseminate, any of the plaintiff's personal information").

Finally, citing *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), both the University and Google argue that Mr. Dinerstein has alleged only a hypothetical future injury because he fails to allege that Google actually re-identified him from his medical records. (Univ. Mot. at 8; Google Mot. at 5-6.) But as the Seventh Circuit reminds, "it is important not to overread *Clapper*." *Remijas*, 794 F.3d at 694. "*Clapper* was addressing speculative harm based on something that may not even have happened to some or all of the plaintiffs." *Id*. Specifically, the plaintiffs in *Clapper* "expressed only their fear that the government *might* have intercepted their private communications," which was too speculative to support standing. *Lewert*, 819 F.3d at 966. "In contrast, the alleged [invasion of privacy here] ha[s] *already* occurred." *Id*. The University—at Google's urging—has *already* disclosed Mr. Dinerstein's confidential medical records to Google. "[T]here is no need to speculate as to whether [Mr. Dinerstein's] information has been [disclosed] and what information was [disclosed]." *Id*. (internal citation omitted). *See also Remijas*, 794 F.3d at 692 ("Here, the complaint alleges that everyone's personal data has already been stolen."). Simply put, the invasion of Mr. Dinerstein's privacy—his Article III injury—occurred when the University sold his private medical records to Google, not when Google re-identifies him. Indeed, the Complaint alleges that the records were not sufficiently anonymized such that re-identification is even necessary to determine to whom a record refers. (Compl. ¶¶ 68-69, 89, 95.) In any event, to the extent that no injury occurs until a re-identification is made, given that Google is Google (*see id*. ¶¶ 71-91), "there is an objectively reasonable likelihood that such injury will occur," and Mr. Dinerstein "should not have to wait"

for that to happen in order to have standing. *Lewert*, 819 F.3d at 966 (internal quotations omitted).

### C. Defendants stole the commercial value of Mr. Dinerstein's medical information.

Finally, in addition to invasion of privacy and overpayment, Mr. Dinerstein was also injured because his confidential medical information has commercial value (*see*, *e.g.*, Compl. ¶¶ 21-29), which was essentially stolen from him when the University sold it to Google without his consent. The University argues that Mr. Dinerstein "lacks a legal interest" in his medical information. (Univ. Mot. at 5). But *Lewert*, on which the University relies, says nothing of the sort. To the contrary, *Lewert* expressly distinguished information protected by statute. 819 F.3d at 968 (distinguishing *Sterk*, because in that case, a statute created a legal interest in a consumer's information). Here, Mr. Dinerstein's medical information is protected not only by statutes like HIPAA and the MPRA, but also by the University's contractual obligation not to disclose such information without his consent, as well as by common law protections for medical information. All of these protections—statutory, contractual, and common law—establish Mr. Dinerstein's legal interest in his own medical information, and the Defendants' use of that information for their own commercial gain without his consent or compensation is an injury to him.

Furthermore, contrary to the University's suggestion, its conversion of the commercial value of Mr. Dinerstein's information is a harm to him even if he wasn't himself trying to wring the value out of it. *See Zegers v. Zegers, Inc.*, 458 F.2d 726, 730 (7th Cir. 1972) ("[I]f [a patent-holder] does not himself sell the product, he may nevertheless be injured by the unlicensed practice of his invention."); *Vojdani v. Pharmsan Labs, Inc.*, 741 F.3d 777, 786 (7th Cir. 2013) ("We do not hold that damages cannot be awarded for breach of a confidentiality agreement

9

when the parties are not in direct competition.").[2] The injury in such cases is lost royalties—"the amount an unauthorized user of proprietary information would have agreed to pay if negotiating in good faith." *Id*. That injury supports Article III standing here.

## II. THE COMPLAINT STATES A CLAIM FOR RELIEF.

Although it alleges several different counts, Mr. Dinerstein's complaint is premised on one core set of facts: the University, at Google's urging, sold his private medical information to Google. That constitutes a single "claim for relief" under the federal rules, "no matter how many laws the deeds violate." *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Thus, "although the defendants challenge the viability of each legal theory asserted against them, plaintiff['s] complaint, asserting that single claim, survives if it is supported by any single recognized legal theory." *Zurbriggen v. Twin Hill Acquisition Co.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018) (citing *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012)). That includes theories that are "not expressly identified in the complaint." *Id*. (internal citation omitted). Thus, to prevail on their Rule 12(b)(6) motions to dismiss, the University and Google must show that none of the legal theories advanced against them, or any other legal theory, plausibly establishes a right to relief. *Id*. This they cannot do. As explained below, there are numerous theories—contractual, statutory, and tort—under which Mr. Dinerstein can prevail and recover for Defendants' acts.[3]

---

[2] The University's reliance on *Silha v. ACT, Inc.* is not helpful, because in that case—unlike here—the plaintiffs expressly consented to the disclosure of their information. 807 F.3d at 175.

[3] These theories support Mr. Dinerstein's claims for unjust enrichment as well. "Where the unjust enrichment claim is predicated on the same conduct as another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall on that related claim." *Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650, at *6 (N.D. Ill. Sept. 28, 2017) (internal quotation omitted).

### A. The Complaint sufficiently alleges breach of contract and tortious interference with contract.

Mr. Dinerstein can recover under a breach of contract theory against the University, and relatedly, under a tortious interference with contract theory against Google. As explained above, Mr. Dinerstein and the University entered into an agreement whereby the University agreed, among other things, that (1) it would take all efforts to protect his privacy, (2) any use of his medical information would be in compliance with federal and state law, and (3) it would obtain his written permission before selling his medical information. Mr. Dinerstein alleges that the University breached that agreement by selling his medical information to Google without his consent, that he fully performed his obligations under the contract, and that he was damaged by Google's breach. (Compl. ¶¶ 127-36.) This is sufficient to allege a breach of contract. *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 858 (7th Cir. 2019). With respect to Google, the Complaint alleges that Google knew of the University's contracts with patients like Mr. Dinerstein, and that it intentionally and without justification induced the University to breach those contracts. (Compl. ¶¶ 156-57.) This is sufficient to allege tortious interference with contract. *See Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 834 (N.D. Ill. 2019).[4]

Defendants make a host of arguments why there is no breach of contract alleged here, but all of them are without merit.

---

[4] Google argues that Mr. Dinerstein fails to allege any "wrongful intent" by Google, which (according to Google) is fatal to his tortious interference claim. (Google Mot. at 10.) But "a plaintiff in a[n] interference-with-contract action does not need to prove that the defendant's conduct was malicious … unless that defendant's conduct was privileged." *Illinois Bell Tel. Co. v. Plote, Inc.*, 334 Ill. App. 3d 796, 806 (1st Dist. 2002). Google does not, nor could it, argue that it had some privilege to interfere with Mr. Dinerstein's contract with the University. *See, e.g.*, *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 157 (1989) ("Courts will recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights.").

### 1.     HIPAA does not preempt the contract (or any other) claim.

First, the University argues that Mr. Dinerstein's contract claim "is an impermissible attempt to privately enforce HIPAA." (Univ. Mot. at 10.) (*See also* Google Mot. at 6 n.8.) Mr. Dinerstein agrees that HIPAA contains no private right of action, and he isn't asking the Court to recognize one here. But the University also argues that the lack of a private right of action in HIPAA means that Congress "*prohibit[s]* private enforcement of" the statute in any manner whatsoever, including by way of state law. (Univ. Mot. at 10) (emphasis added). According to the University, Mr. Dinerstein is "end-running Congress by masking HIPAA claims as common law claims." (*Id.*)

This argument is "mistaken at its core[.]" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 654 (7th Cir. 2015). "The end-run theory is built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) "The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law. To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Bible*, 799 F.3d at 654 (quoting *Wigod*, 673 F.3d at 581). Accordingly, the fact that Congress did not include a private right of action in a federal statute does not displace common law or state statutory claims that depend on or incorporate federal regulations. *Wigod*, 673 F.3d at 581.

Other than by identifying the lack of a private right of action, the University makes little attempt to argue that HIPAA preempts Mr. Dinerstein's state law claims. *See id.* ("The issue … is not whether federal law itself provides private remedies, but whether it displaces remedies

12

otherwise available under state law."). It contends that HIPAA is enforced "*exclusively* by the federal government … and State Attorneys General," (Univ. Mot. at 10) (emphasis in original), but its citations to HIPAA do not contain even a mention of exclusivity or any other limitation on private civil actions, (42 U.S.C. §§ 1320d-5, d-6.) The relevant portion of HIPPA is 42 U.S.C. § 1320d-7(a)(1), which provides only for conflict preemption. *See also* 45 C.F.R. § 160.203 (implementing regulation). There can be no conflict here because "federal law simply provides the standard of compliance, and the parties' duties are actually enforced under state law." *Bible*, 799 F.3d at 653 (applying same standard for a conflict as set forth in 45 C.F.R. § 160.202). In any event, HIPAA does not preempt state laws that provide greater rights with respect to privacy of personal information than federal law. 45 C.F.R. §§ 160.202, 203(b).

## 2. The pre-existing duty rule does not apply.

The University also argues that its promise that "any use of [Mr. Dinerstein's] medical information will be in compliance with federal and state law" (Agreement § III) sets forth a pre-existing legal duty and is therefore not enforceable (Univ. Mot. at 10). This argument overreaches for three reasons.

First, the University misunderstands the rule. An entity promising to comply with statutory obligations (the promisor) still breaches a contract when it fails to live up to that promise; what the pre-existing duty rule prevents is the promisor using a pre-existing duty as consideration to extract an enforceable promise from a promisee. *See* 3 Williston on Contracts § 7:41 (4th ed.) ("Although a promise of something which the promisor is under a legal duty to perform cannot be valid consideration for a return promise … there is no reason why such a promise should not itself be enforceable if supported by sufficient consideration."); 17A Am. Jur. 2d Contracts § 149 ("[A]lthough a promise to do a thing that the promisor is legally bound to do

is not generally sufficient consideration to support a reciprocal undertaking by the promisee, such promise may be enforced against the promisor, notwithstanding that its enforcement compels the performance of what is already a legal obligation."); *e.g., White v. Vill. of Homewood*, 256 Ill. App. 3d 354, 357 (1st Dist. 1993) ("[W]here a guest was by statute entitled to use a hotel safe to store valuables, a promise by the guest to limit the liability of the hotel in exchange for using the safe is not supported by consideration because of the pre-existing duty rule."). The University's own promises are, accordingly, enforceable.

Second, the rule has no effect in a contract that contemplates more than the pre-existing duty. If "defendant had promised procedures that the law already required, and nothing more, then, arguably, the preexisting-duty rule would prevent the formation of a contract[.]" *Lo v. Provena Covenant Med. Ctr.*, 356 Ill. App. 3d 538, 543 (4th Dist. 2005). But here, "[n]o law required defendant … to grant plaintiff the privilege" to be treated at its hospital, "[n]or did any law require" the University to treat him. *See id.* "Each party conferred a benefit on the other, and their mutual benefit is consideration." *Id.* That the contract contains additional provisions, "many of them mandated by law," is immaterial. *Id.* The contract is supported by consideration on both sides and is enforceable.

Third, the promises made in the Agreement go beyond compliance with federal and state law. Most obviously, as the University repeatedly points out, neither HIPAA nor the MPRA contain a private right of action. In fact, those statutes grant Mr. Dinerstein no rights at all and therefore create no duty that the University owes to Mr. Dinerstein himself. *See Alexander v. Sandoval*, 532 U.S. 275, 289-90 (2001). Without the contract, Mr. Dinerstein would have had to rely on a government agency to enforce the University's statutory obligations. By bargaining for a contractual promise to abide by the rules set out in federal and state privacy statutes, Mr.

Dinerstein has secured a new duty owed directly to him, and with that duty, the valuable right to enforce the provisions in the relevant federal and state statutes on his own.

Other clauses in the Agreement also create duties—beyond those specified by statute—that Plaintiff is trying to enforce here. The University agreed that "all efforts will be made to protect [Mr. Dinerstein's] privacy." (Agreement § III.) Because the word "and" separates this promise from the promise that any use of medical information will comply with federal and state law (*id*.), the University's promise to take all efforts to protect patient privacy is in *addition* to any legal requirements. Furthermore, the University agreed that "any use of [Mr. Dinerstein's] medical information will be in compliance with … the Notice of Privacy Practices" (*id*.), which goes on to promise, among other things, that the University will obtain Mr. Dinerstein's "written permission" prior to a "sale of [his] medical information." (NPP at 5.) Because the University promised privacy protection beyond what is legally required, there is no pre-existing duty problem. *See, e.g., Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2016 WL 754731, at *9 (N.D. Ill. Feb. 23, 2016) (denying motion to dismiss where "the Privacy Pledge contains other provisions unrelated to Defendant's compliance with federal law"); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-MD-2633, 2017 WL 539578, at *17 (D. Or. Feb. 9, 2017) ("[Defendant's] argument … overlooks Plaintiffs' allegations that include promises other than compliance with HIPAA."); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2016 WL 3029783, at *12 (N.D. Cal. May 27, 2016) ("[S]uch statements could be read to reflect a commitment by [defendant] to implement privacy policies that complement (or go beyond) [defendant's] preexisting legal duties.").

Both Defendants argue that the University's promise to use "all efforts" to protect patient privacy is too vague to create liability, comparing it to "best efforts" clauses that Illinois finds

15

not enforceable. (Univ. Mot. at 9; Google Mot. at 8-9 & n.15.) But Defendants are wrong about Illinois law. "Illinois courts have enforced best efforts clauses." *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). *See also Res. Dealer Grp., Inc. v. Exec. Servs., Ltd.*, No. 97 C 4343, 1997 WL 790737, at *3 (N.D. Ill. Dec. 18, 1997) ("Illinois does not have a rule against enforcing such clauses. Rather, Illinois courts have enforced best efforts clauses in a variety of contracts."). A "best efforts" clause is essentially an obligation to act in good faith, *Coleman v. Madison Two Assocs.*, 307 Ill. App. 3d 570, 578 (1st Dist. 1999); *Grant v. Bd. of Educ. of City of Chicago*, 282 Ill. App. 3d 1011, 1024 (1st Dist. 1996), and whether a party has satisfied that obligation is ultimately a question for the trier of fact, *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 249 F.R.D. 530, 533 (N.D. Ill. 2008) (citing *Grant*). The University's agreement to use "all efforts … to protect [Mr. Dinerstein's] privacy" is enforceable and whether the University breached it is a question for later proceedings. *See Res. Dealer Grp.*, 1997 WL 790737 at *3 (finding that it would be "premature" to dismiss claim that defendant breached "best efforts" clause). Regardless, even if the "all efforts" clause were unenforceable, that still leaves the University's express agreement to obtain Mr. Dinerstein's written permission prior to selling his medical information. (NPP at 5.)

### 3. HIPAA (and thus the contract) does not allow disclosure here.

Both Defendants argue that HIPAA allows the disclosure here, and thus, there was no breach of the University's agreement to comply with HIPAA. (Univ. Mot. at 10; Google Mot. at 6-8.) As noted above, even if the University complied with HIPAA, it still breached other promises made in the Agreement. But regardless, Defendants' argument that HIPAA allows the disclosures here is wrong.

Defendants point to two exceptions to HIPAA's general non-disclosure rule: 45 C.F.R. § 164.512(i), which allows the disclosure of confidential medical information for research, and 45 C.F.R. § 164.514(e), which allows the disclosure of a so-called "limited data set." But each of those exceptions has numerous requirements that Defendants would ultimately need to establish in order to take advantage of them. For example, § 164.512(i) requires that the University has "obtain[ed] documentation that an alteration to or waiver" of patient authorization has been approved by an institutional review board or privacy board, *id.* at § 164.512(i)(1)(i), and that it has obtained certain representations from Google, *id.* at § 164.512(i)(1)(ii), (iii). Further, the institutional review board approval documentation is subject to several additional requirements to show that the board properly considered various criteria. *Id.* at § 164.512(i)(2). Likewise, § 164.514(e) specifies exactly what needs to be excluded from patient information to constitute a limited data set, *id.* at § 164.514(e)(2), and what representations Google needed to make to the University to obtain such information, *id.* § 164.514(e)(4). Whether Defendants sufficiently complied with each of the requirements that would allow them to take advantage of one or both of these exceptions is a question to be answered by discovery, not Defendants' conclusory statements in a motion to dismiss. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) ("[B]ecause affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense.") (internal quotations omitted).

Furthermore—and critically—HIPAA expressly prohibits the sale of protected health information without authorization that includes a statement that the seller is receiving remuneration. 45 CFR § 164.502(a)(5)(ii); *id.* § 164.508(a)(4). While a hospital can be compensated for medical records disclosed for research (under the regulations cited by

17

Defendants), the only remuneration permitted is "a reasonable cost-based fee to cover the cost to prepare and transmit" the records. 45 C.F.R. § 164.502(a)(5)(ii)(B)(2)(ii). The Complaint, however, alleges that the University received more than that for its patients' medical information. (Compl. ¶ 66.) And again, even if Defendants fully complied with HIPAA, such a sale violates other contractual obligations, such as the Notice of Privacy Protection's express promise to "obtain [Mr. Dinerstein's] written permission" prior to "the sale of [his] medical information." (NPP at 5.)

### 4. The MPRA (and thus the contract) does not allow disclosure here.

Both Defendants also argue that the University's disclosure did not violate the MPRA, and thus, did not breach the University's agreement to comply with state law. (Univ. Mot. at 11; Google Mot. at 8.) Defendants are wrong.

The MPRA provides that:

> Any patient who is the subject of a research program or an experimental procedure, as defined under the rules and regulations of the Hospital Licensing Act, shall have, at a minimum, the right to receive an explanation of the nature and possible consequences of such research or experiment before the research or experiment is conducted, and to consent to or reject it.

410 ILCS 50/3.1(a).

The implementing regulations of the Hospital Licensing Act regulations define a research program as:

> any organized activity intended to establish new medical or scientific information, involving medical, surgical, manipulative, or psychiatric diagnosis or treatment of human subjects who are inpatients or outpatients of a hospital and who are subjects at risk.

77 Ill. Admin. Code § 250.130(b)(1)(B). The University's partnership with Google meets this definition. The research study that Mr. Dinerstein was involuntarily enrolled into was organized and was intended to establish new medical information. (*See*, *e.g.*, Compl. ¶¶ 41-42.) The study

18

involved the medical diagnosis and treatment of Mr. Dinerstein, a human subject, and relied specifically on information regarding his inpatient hospital stays. (*See*, *e.g.*, *id*. ¶ 65.) Additionally, Mr. Dinerstein is a "subject at risk," which is defined as "any individual who may be exposed to the possibility of injury, including physical, psychological, or social injury," 77 Ill. Admin. Code § 250.130(b)(1)(C), in light of the invasion of privacy attending the University's disclosure of his confidential medical records to Google for analysis. The Complaint simply does not establish that the University complied with the MPRA, and Defendants' motion to dismiss on such grounds must fail.

### 5.    Mr. Dinerstein alleges damages.

Finally, the University incorrectly argues that Mr. Dinerstein failed to plead damages resulting from its breach of their contract. It starts with what it terms a "threshold matter"—that Mr. Dinerstein purportedly "disclaimed in the [Agreement] any right to compensation resulting from research involving his [medical records]." (Univ. Mot. at 12.) Effectively, the University is attempting to enforce the provision in the Agreement that states in relevant part, "I understand that I will not be entitled to any compensation, regardless of the value of such research or any products or inventions developed therefrom." (Agreement § III.) But "[t]he rule of law is that a party seeking to enforce a contract has the burden of proving it has substantially complied with all material terms of the agreement." *MHM Servs., Inc. v. Assurance Co. of Am.*, 2012 IL App (1st) 112171, ¶ 48. "A party who materially breaches a contract cannot take advantage of the terms of the contract that benefit him[.]"*James v. Lifeline Mobile Medics*, 341 Ill. App. 3d 451, 455 (4th Dist. 2003). As explained above, Mr. Dinerstein alleges that the University has committed a material breach of the Agreement by selling his confidential medical information to

Google. Having breached the contract, the University cannot now enforce a closely related provision against Mr. Dinerstein to its own benefit.

The University's suggestions that Mr. Dinerstein fails to plead damages similarly lack merit. Mr. Dinerstein identifies at least two alternative remedies that can permit him to recover here: (1) restitution on the basis that he did not receive the full benefit of his payments to the University, and (2) money damages in the form of a reasonable royalty. Both satisfy Rule 8's pleading standards. *See Nat'l Jockey Club v. Ganassi*, No. 04 3743, 2009 WL 2177217, at *5 (N.D. Ill. July 21, 2009) ("Money damages are unquestionably a standard measure of damages for breach of contract, as is restitution.").

Most glaringly, the University does not argue that restitution is categorically not permitted, or that Mr. Dinerstein failed to plausibly allege entitlement to such relief in his complaint. Rather, it points out that seeking restitution in a contract action "may, under certain circumstances, be mutually inconsistent" with seeking damages for breach, "requiring an election of remedies." *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 18 (1st Dist. 2006). That's true, but irrelevant at the pleading stage in federal court, where "the Federal Rules of Civil Procedure … expressly abolish election of remedies." *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990). "Those rules of course apply … even if the issue being litigated is one of state law," including specifically in the election of remedies context. *Id.* In any event, even "Illinois courts have concluded that a determination of the election of remedies doctrine is not appropriate at the pleading stage of a lawsuit." *Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, No. 09 C 4963, 2011 WL 829390, at *8 (N.D. Ill. Mar. 3, 2011) (citing *Ransburg v. Haase*, 224 Ill. App. 3d 681, 689–90 (3d Dist.

1992). Accordingly, any argument about inconsistent remedies cannot support dismissing this case on the pleadings.

Setting aside restitution, Mr. Dinerstein also plausibly alleges damages in the form of the reasonable royalty that the University would have paid him for his information had it been acting in good faith. Citing *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 346 (6th Cir. 2018), the University contends that a reasonable royalty theory is never appropriate in a breach of contract action without an accompanying patent infringement or trade secret claim. To the extent the Sixth Circuit so held, its holding conflicts with the Seventh Circuit's opinion in *Vojdani*, which involved a claim for breach "of the confidentiality agreement alone," without any attendant patent or misappropriation of trade secret claim. 741 F.3d at 784. The plaintiff in *Vojdani* "would have gained nothing" if the defendant had "complied with the confidentiality agreement[.]" *Id.* at 785-86. Nevertheless, the Seventh Circuit held that "[o]ne obvious remedy for such a breach, when the confidential information is used by the defendant for its own commercial purposes, is a reasonable royalty" in "the amount an unauthorized user of proprietary information would have agreed to pay if negotiating in good faith." *Id.*[5] The University misused Mr. Dinerstein's confidential information for its own financial gain, and a reasonable royalty is an appropriate and obvious remedy for such a breach.

**B.      The Complaint sufficiently alleges a violation of the ICFA.**

In addition to stating claims for breach of contract and tortious interference with contract, the Complaint also alleges a violation of the Illinois Consumer Fraud Act, 815 ILCS 505. The

---

[5]      While there is no Illinois authority directly on point, the *Vojdani* court, sitting in diversity and applying Wisconsin law, similarly did not specifically refer to state law authority. Illinois courts have given no indication that this generally-accepted common law principle of recovery is unavailable.

University raises three cursory challenges to Mr. Dinerstein's ICFA claim (Univ. Mot. at 13-14), but none warrant dismissal.

First, the University argues that Mr. Dinerstein has not stated a "deceptive practices" claim because he does not satisfy the pleading requirements of Rule 9(b). (Univ. Mot. at 13.) This fails on a number of levels. Foremost, it ignores—and, thus, concedes—that Mr. Dinerstein also alleges ICFA claims based on the University's unfair and unlawful conduct, (Compl. ¶¶ 108-112, 114-122), which "need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)." *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 899-900 (N.D. Ill. 2012) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008)).[6] And while Mr. Dinerstein admits that he must plead fraudulent conduct with particularity, he does so here by alleging that that the University *specifically* promised to protect and not sell his medical information upon his admission to the hospital through the Agreement and Notice of Privacy Practices, but went on to sell that information to Google. (Compl. ¶¶ 61-63, 92-97.) In other words, Mr. Dinerstein readily alleges "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to [him]."

---

[6]     In a footnote, the University suggests that no "unfair" conduct is alleged and suggests that Plaintiff really seeks to "transform[] allegations of fraud ... to take advantage of the lower pleading standard." (Univ. Mot. at 13 n.14.) Not true. Courts have found that a defendant's disregard of security and privacy measures relating to confidential patient data—i.e., the exact conduct alleged here—can amount to an "unfair practice under the ICFA." *Worix*, 869 F. Supp. 2d at 900. Further, the fact that unfair conduct may also be fraudulent (and vice versa) does not mean that a plaintiff must proceed under the stricter pleading requirements of Rule 9, as the University suggests. *See Benson v. Fannie May Confections Brands, Inc.*, No. 19-1032, 2019 WL 6698082, at *3-4 (7th Cir. Dec. 9, 2019) (finding that defendant's alleged misrepresentations were both deceptive and unfair under the ICFA).

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). He satisfies Rule 9(b) as a result.

Second, the University says that Mr. Dinerstein's ICFA claim fails because it is "duplicative of his breach of contract claim." (Univ. Mot. at 13.) But the allegations supporting Mr. Dinerstein's ICFA claim are not merely that the University breached its patient contracts; rather, he alleges that the University "made affirmative false presentations ... on a widespread basis" for the purpose of attracting more business. *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691, 704 (N.D. Ill. 2016); (*see* Compl. ¶¶ 31, 109-111.) Because these allegations go "beyond a simple breach of contract," they bring Mr. Dinerstein's claim squarely within the ICFA. *Santangelo*, 162 F. Supp. 3d at 704 (citing *Rumford v. Countrywide Funding Corp.*, 287 Ill. App. 3d 330, 335 (2d Dist. 1997)).

Finally, the University contends that Mr. Dinerstein fails to plead pecuniary loss. (Univ. Mot. at 14.) But the ICFA's requirement of "actual loss" may occur where a defendant's deception "deprives the plaintiff of 'the benefit of her bargain[.]'" *Benson*, 2019 WL 6698082, at *4 (7th Cir. Dec. 9, 2019) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). The failure to receive everything he paid for is *precisely* what Plaintiff alleges here. (Compl. ¶¶ 112, 117, 121.) Further, it is fair to infer that *had* the University been forthright about its privacy practices, Mr. Dinerstein could have "shopped around" and sought healthcare at a hospital that honored its patient privacy obligations. (*See id*. ¶ 67) (other hospitals did not provide similar patient data to Google); (*Id*. ¶ 116) (Plaintiff would not have paid Defendant had he known the truth). *See Kim*, 598 F.3d at 365-66. Either way, Mr. Dinerstein readily alleges benefit of the bargain losses to support a claim under the ICFA.

23

### C.     The Complaint sufficiently alleges common law torts by both Defendants.

In addition to contract and statutory consumer fraud, Mr. Dinerstein can prevail on a common law tort theory. Although his complaint refers to intrusion upon seclusion, the theory is more along the lines of breach of confidentiality. Specifically, a common law cause of action exists for the unauthorized disclosure by a medical provider of patients' medical information, which the University—with Google's encouragement and assistance—engaged in.[7]

A "clear modern consensus" of courts has recognized a common law cause of action for the unauthorized disclosure of patients' medical information. *Lawson*, 212 A.3d at 1217-18. *See also*, *e.g.*, *Byrne v. Avery Ctr. for Obstetrics & Gynecology, P.C.*, 175 A.3d 1, 15 (Conn. 2018); *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518, 523 (Ohio 1999); *McCormick v. England*, 494 S.E.2d 431, 437 (S.C. Ct. App. 1997); *Alberts v. Devine*, 479 N.E.2d 113, 120 (Mass. 1985). Though courts have relied on various theories to support such a cause of action, including invasion of privacy, breach of implied contract, medical malpractice, and breach of a fiduciary duty, "[t]he most commonly accepted theory is breach of the duty of confidentiality[.]" *Lawson*, 212 A.3d at 1218.

While Illinois has not expressly adopted such a tort claim, when state law is unclear, "the best guess is that the state's highest court, should it ever be presented with the issues, will line up with the majority of the states." *Vigortone AG Prod., Inc. v. PM AG Prod., Inc.*, 316 F.3d 641,

---

[7]     "A plaintiff may initially plead a legal theory unsustainable on the facts contained in the complaint but later survive dismissal by suggesting, in response to a motion under Rule 12(b)(6), a theory that would give rise to relief on facts not inconsistent with those in the complaint." *Hart v. Transit Mgmt. of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005), *overruled on other grounds by Humphries v. CBOCS W., Inc.*, 474 F.3d 387 (7th Cir. 2007). *See also Williams v. Seniff*, 342 F.3d 774, 791-93 (7th Cir. 2003).

644 (7th Cir. 2002).[8] In light of the general consensus of other jurisdictions, the Illinois Supreme

Court would likely agree and recognize such a cause of action. Illinois's likely endorsement of

such a tort claim is further supported by a decision of the Illinois Appellate Court involving

communications between defense counsel and plaintiffs' treating physicians, *Petrillo v. Syntex*

*Laboratories, Inc. See* 148 Ill. App. 3d 581 (1st Dist. 1986). . In *Petrillo*, the court engaged in a

lengthy discussion of physician-patient confidentiality, noting that "modern public policy

strongly favors the confidential and fiduciary relationship existing between a patient and his

physician." 148 Ill. App. 3d at 587. The court repeatedly discussed this relationship in terms of a

"right" of patients. *Id*. at 592 ("[A] patient seeking a physician's help [has] an *affirmative right*

to rely on his physician to faithfully execute" ethical obligations, including confidentiality.); *id*.

("[W]e believe … that patients in Illinois possess … the right to rely on physicians to faithfully

execute their ethical duties and thereby protect the confidentiality of the physician-patient

relationship."). And while the issue here was not directly before the court in *Petrillo*, that court

explained that unauthorized communications between a doctor and an opposing lawyer "may be

potentially harmful to the interests of the patient in that the physician might disclose intimate

facts of the patient," and pointedly noted "that many jurisdictions have recognized the existence,

on the patient's behalf, of a cause of action for 'Breach of confidence' where a physician

discloses a patient's medical confidences without the patient's consent." *Id*. at 595 & n.3.

    If faced with the question explicitly, the Illinois Supreme Court would thus likely adopt

an express cause of action in tort for unauthorized disclosure of medical confidences.[9] Mr.

---

[8]    In determining questions of state law, this Court's role is to predict how the highest state
court would answer them. *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811-12
(7th Cir. 2018).
[9]    Regardless, other tort theories recognized in Illinois such as breach of fiduciary duty or
breach of implied contract support such a claim. Defendants do not challenge the existence of an

Dinerstein clearly states such a claim against the University because he alleges that the University disclosed—indeed, sold—his medical confidences to Google without his consent. Furthermore, Google can be liable for the University's breach of duty because it acted in concert with the University. "In-concert liability is a relationship between tortfeasors in which one tortfeasor acting in concert with others 'is legally responsible for the actions of the other individuals.'" *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1025 (7th Cir. 2018) (quoting *Woods v. Cole*, 181 Ill. 2d 512, 519 (1998)

A defendant can be subject to in-concert liability if it "(a) does a tortious act in concert with the other or pursuant to a common design with him [or] (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Id*. (quoting Restatement (Second) of Torts § 876).[10] Here, the Complaint alleges that Google announced that it was "partnering" with the University to collect University patients' confidential medical records, and paid the University for those records. (Compl. ¶¶ 58-59, 66.) This sufficiently alleges in-concert liability under the first prong of the Restatement. *See* Restatement (Second) of Torts § 876 cmt. *a* ("Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result."). Mr. Dinerstein also alleges liability under the second prong of the

---

implied contract (which was explicitly alleged in the Complaint) other than to state that Mr. Dinerstein doesn't identify "what communications formed the basis" of the contract. (Univ. Mot. at 9.) But an implied contract exists simply by the fiduciary nature of the physician/patient relationship between the University and Mr. Dinerstein. *See Petrillo*, 148 Ill. App. 3d at 594 (1st Dist. 1986) ("There is an implied promise, arising when the physician begins treating the patient, that the physician will refrain from engaging in conduct that is inconsistent with the 'good faith' required of a fiduciary."). *See also Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (2d Dist. 1979) (recognizing cause of action for "breach of an implied contract not to disclose confidential information acquired through the physician-patient relationship.").

[10] "Illinois has adopted the Restatement (Second) of Torts § 876 to determine whether individuals have acted in concert to commit a tortious act." *Hutchison*, 910 F.3d at 1025.

Restatement by alleging that Google knew of the University's duty to keep Mr. Dinerstein's medical information confidential but nevertheless encouraged the University to disclose it to Google. (*See*, *e.g.*, Compl. ¶¶ 7-10, 29, 43-50, 58-59, 67, 156-57).

## CONCLUSION

Because Mr. Dinerstein has Article III standing and states a claim for relief against both Defendants under any number of theories, the motions to dismiss should be denied. If the Court grants the motions to dismiss, in whole or in part, Plaintiff requests that he be permitted to replead.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td><br><b>MATT DINERSTEIN,</b> individually and on behalf of all other similarly situated,</td></tr>
<tr><td>Dated: December 20, 2019</td><td>By: s/Jay Edelson<br>    One of Plaintiff's Attorneys</td></tr>
</table>

Jay Edelson
jedelson@edelson.com
Benjamin H. Richman
brichman@edelson.com
Christopher L. Dore
cdore@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Alexander G. Tievsky
atievsky@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378