**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MATT DINERSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, LLC, a Delaware limited liability company, and THE UNIVERSITY OF CHICAGO MEDICAL CENTER, an Illinois not-for-profit corporation, THE UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation,<br><br>Defendants. | Case No. 1:19-CV-04311<br><br>Chief Judge Rebecca Pallmeyer |

**THE UNIVERSITY OF CHICAGO AND THE UNIVERSITY OF CHICAGO MEDICAL CENTER'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL AUTHORITY**

The University of Chicago and the University of Chicago Medical Center respectfully submit the following response to Plaintiff's Motion for Leave to Cite Supplemental Authority ("Mot. for Leave", ECF No. 77) in support of his Opposition to the University's pending Motion to Dismiss. (ECF Nos. 43 & 44). Plaintiff contends that the recent decision of the Ninth Circuit Court of Appeals in *In re Facebook, Inc. Internet Tracking Litigation*, No. 17-17486, 2020 WL 1807978 (9th Cir. Apr. 9, 2020) ("*Facebook*"), supports Plaintiff's allegations of an Article III injury-in-fact because the University allegedly "misappropriated the commercial value of Plaintiff's data." Mot. for Leave at 1. That argument has no merit, because the *Facebook* decision is inconsistent with Seventh Circuit law, and in any event, the facts pled in *Facebook* are completely distinguishable from the allegations Dinerstein makes in this lawsuit.

In *Facebook*, website users asserted common law and statutory privacy claims stemming from Facebook tracking browsing histories and selling them to advertisers to generate revenue.

*See Facebook*, 2020 WL 1807978, at *1. As Plaintiff notes, the Ninth Circuit held that the plaintiffs had Article III standing to bring some of their claims for a specific reason: "[b]ecause California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing." *Id.* at *6.

***First*,** the Ninth Circuit's holding is inconsistent with binding Seventh Circuit precedent. The Ninth Circuit concluded an Article III injury may occur when a defendant is unjustly enriched "even where [the plaintiff] has not suffered a corresponding loss," rooting that conclusion in California law. *Id.* at *5 ("State law can create interests that support standing in federal courts. As relevant here, California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss.") *Id.* at *5 (emphasis added) (internal quotation marks and citation omitted). But the Seventh Circuit, applying ***Illinois law***, has held the opposite. The Seventh Circuit has held that Article III bars the door to federal court *unless* the Plaintiff alleges an *actual injury to himself*, which would occur only if the alleged use of the Plaintiff's information deprived *Plaintiff* of its economic value:

> [P]laintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss. Here, Plaintiffs have not alleged that they lost anything of value [from sharing their information]. . . . Plaintiffs have pled that Defendants profited from the sale of their [information], but they did not establish how this profiteering deprived them of the economic value of this information.

*Silha v. ACT, Inc.*, 807 F.3d 169, 174-175 (7th Cir. 2015). Similar to the allegations in *Silha*, Dinerstein alleges only that the University *gained,* not that he suffered a loss, from the University's provision of certain data fields to Google. *E.g.*, Amended Complaint ("AC") ¶ 135 (claiming that the University "obtain[ed] a benefit" by "receiv[ing] payment for [his] medical information in the form of a valuable perpetual license").

***Second***, even if *Facebook* were good law in this circuit, it is distinguishable on its facts. There, the Ninth Circuit's standing determination relied on the fact the plaintiffs did not provide "authorization for the use of their personal information." *Facebook*, 2020 WL 1807978, at *6. In contrast, Dinerstein consented to the sharing of his medical information. The University provides patients with a Notice of Privacy Practices ("NPP") and Admission and Outpatient Agreement and Authorization (the "Authorization"). Mot. to Dismiss, Ex. 1 at 2, 4; AC, Ex. 2. The NPP and Authorization expressly confirm that Plaintiff's medical records could be shared for research, and the Heath Insurance Portability and Accountability Act ("HIPAA") provides multiple pathways for sharing the type of data at issue here. *See* AC, Ex. 2; 45 C.F.R. §§ 164.514(e), 164.512(i).

Moreover, in *Facebook* there was no dispute that defendant had sold plaintiff's information to advertisers for a cash profit. *See Facebook*, 2020 WL 1807978, at *3. Here, in contrast, Plaintiff does not allege that the University received any money from Google, and, in fact, it did not. Plaintiff's assertion that the University received a "perpetual license to use the software it developed," AC ¶¶10, 118, misstates the Data Use Agreement upon which Plaintiff's argument relies. Under the DUA, the University only retained the right to use computer models created with the University's data for "internal non-commercial research purposes." ECF No. 42–1, DUA at § 3.12.

\*   \*   \*

For the reasons outlined in the University's Motion to Dismiss, Plaintiff's Amended Complaint fails as a matter of law and should be dismissed with prejudice.

Dated: May 7, 2020										Respectfully submitted,

										/s/ Brian D. Sieve
										Brian D. Sieve, P.C.
										Michael B. Slade
										Sydney Schneider
										brian.sieve@kirkland.com
										michael.slade@kirkland.com
										sydney.schneider@kirkland.com
										KIRKLAND & ELLIS LLP
										300 North LaSalle
										Chicago, IL 60654
										Telephone: 312-862-2000
										Facsimile: 312-862-2200

										*Attorneys for Defendants The University of Chicago and The University of Chicago Medical Center*

4

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2020, a true and correct copy of the foregoing document, **THE UNIVERSITY OF CHICAGO AND THE UNIVERSITY OF CHICAGO MEDICAL CENTER'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL AUTHORITY**, was electronically filed and served upon counsel of record via the Court's CM/ECF System.

*/s/ Brian D. Sieve*